**FIRST NATIONAL BANK OF PLANO, Texas, Appellant,**

v.

**The STATE of Texas and National Whirlpool Bath, Inc., et al., Appellees.**

No. 19260.

Court of Civil Appeals of Texas, Dallas.

Aug. 12, 1977.

Bill Boyd, John R. Stooksberry, Boyd, Veigel & Gay, Inc., McKinney, for appellant.

Bill Flanary, Asst. Atty. Gen., Austin, Philip Palmer, Jr., Dallas, for appellees.

GUITTARD, Chief Justice.

In this receivership proceeding initiated by the State, the bank appeals from the trial court's refusal to set aside an ex parte order requiring it to turn over to the receiver certain funds deposited in several accounts in the names of the defendants. We hold that the court erred in issuing such an order without notice and hearing.

The suit was filed by the attorney general on behalf of the State against National Whirlpool Bath, Inc. and Doyle Mitchell and wife, Bobbie Mitchell, alleging violation of the Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.47 (Vernon Supp.1976). The petition alleges that the individual defendants have used the designation "National Durafoam Corporation" in their business and have represented that National Durafoam Corporation is a division of National Whirlpool Bath, Inc., when, in fact, it was simply an assumed name under which the individual defendants operated. The petition prays for immediate injunctive relief and also for immediate appointment, without notice, of "a temporary receiver to preserve the assets, property and records of the Defendant Corporation and its Assumed Named Companies." The bank was not named as a party or even mentioned in the petition.

On the day the petition was filed, the court signed an order appointing Zack Mason temporary receiver and empowering him to take possession of all property, records, and assets of the defendants. The receiver immediately filed his oath and bond. Hearing on the petition for temporary injunction and temporary receivership was set for February 18, 1977.

On February 16, 1977, eight days after the petition was filed, the State filed an ex parte motion alleging that the receiver had attempted to take possession of certain funds in possession of defendants on deposit with the bank, but that the bank had failed and refused to turn over these funds to the receiver and that such refusal constituted wrongful interference with the receiver's attempts to comply with the court's order. Without any notice or hearing, and without even any pleading naming the bank as a

party to the suit, the court immediately issued an order requiring the bank to turn over to the receiver all funds deposited in the accounts of the defendants and in the name of "National Durafoam Corporation."

According to the receiver's testimony in the record before us, after his appointment he went to the bank, presented a copy of his order of appointment, and requested that the bank deliver the funds on deposit in the names of the defendants. At first, the bank president said that the funds would be paid, but he later advised that the bank would offset these accounts against a loan held by the bank. After the court issued the order of February 16, the receiver again went to the bank and demanded the funds. The bank then complied with the order and delivered to the receiver three cashier's checks, aggregating $8,969.74, representing funds deposited in the name of National Durafoam Corporation, and another check for $576.37, representing funds deposited in the name of National Whirlpool Bath, Inc.

On February 17 the bank filed a petition in intervention alleging that defendant Doyle Mitchell was indebted to it on a past-due promissory note in the amount of $11,-500, that Mitchell had checking accounts with the bank under the assumed name of National Durafoam Corporation in which there was a balance aggregating $8,969.74, and that on February 10 the bank had exercised its right to offset this indebtedness against the funds deposited in the checking accounts and, consequently, had refused to deliver these funds to the receiver until ordered to do so by the court. The petition in intervention further alleged that the bank had complied with the court's order, but prayed that the court vacate that order because it was a prohibited summary proceeding without notice and because the receiver was entitled to take only such property of Mitchell as Mitchell himself was entitled to receive at that time.

At the hearing on February 18, the bank appeared and presented its petition in intervention and also offered oral testimony. It called as a witness defendant Doyle Mitchell, who testified that "National Durafoam Corporation" was not a corporation, but was an assumed name used by a partnership composed of himself and one Stenburg. He acknowledged that National Durafoam had been held out to be a division of National Whirlpool Bath, Inc., but said that National Whirlpool had no interest in National Durafoam and no connection with it except that the partnership had used National Whirlpool's bank reference to get started.

At the hearing on February 18, the assistant attorney general stated to the court that on the day before the defendant National Whirlpool had filed a petition in bankruptcy in the United States District Court in Dallas, that a receiver had been appointed by the bankruptcy court, but that the referee in bankruptcy had lifted the stay of the state court proceeding to permit the state to continue with the injunction proceeding. The answer of National Whirlpool alleges that it had instituted a proceeding for an arrangement under chapter XI of the National Bankruptcy Act. None of the papers in the bankruptcy proceeding, however, were introduced into evidence, and there is no evidence that the individual defendants were in bankruptcy. The receiver testified that he had deposited the funds claimed by the bank in a trusteeship account and had not turned them over to anyone else, but he understood that he was expected to turn them over to the bankruptcy court. He testified also concerning his services as receiver and the time he had spent performing his duties.

At the conclusion of the hearing, the judge granted a temporary injunction against all defendants pursuant to a stipulation by the parties, and he denied the bank's motion to vacate. The court discharged the receiver, but allowed him a fee of $4,500 from the funds in his possession. An order was signed accordingly, from which the bank has taken this appeal.

■ The bank's only point of error is that the trial court erred in failing to vacate its order of February 16, 1977, because the bank had no notice of the motion seeking the order and was not a party to the

suit. This point is sustained. The law is well settled that a receiver cannot through summary proceedings take into custody property found in the possession of persons claiming adversely. The receiver has no greater right than the person whose property he has been appointed to receive, and if he desires to obtain possession of property in the hands of a stranger to the suit, he must either make that person a party or file a separate action against him. *Ex parte Renfro,* 115 Tex. 82, 273 S.W. 813, 814 (1925). The *Renfro* decision has been followed and reaffirmed by the supreme court in *Ex parte Britton,* 127 Tex. 85, 92 S.W.2d 224, 227 (1936), and in *Ex parte Harvill,* 415 S.W.2d 174, 176 (Tex.1967). In *Harvill,* the court declared that a third party who was summarily ordered to surrender possession of property to the receiver had not been given due process of law in determining his right of possession.

If the bank had made no claim to these funds, a different question might be presented. The record shows, however, that the bank did have a claim to the funds and that this claim has not been adjudicated. Consequently, the trial court erred in issuing the ex parte order of February 16 summarily requiring the bank to pay the funds over to the receiver, and when the bank intervened and asserted its claim to the funds, the court erred in not vacating that order and directing that the funds be restored to the bank until seizure by due process.

The attorney general contends that the rule announced in *Renfro* does not apply because by filing the petition in intervention, the bank made itself a party and waived lack of notice. We cannot agree. It is true that the bank made itself a party at the time of filing its intervention and is in no position to contend that it is not bound by any order made after that time. Its intervention, however, does not preclude it from complaining of any order affecting its interest made ex parte before it became a party. The attorney general's position is extraordinary. Without attempting a justification of the ex parte proceeding, which

would be difficult in view of *Renfro* and the other authorities unequivocally condemning such procedure, he argues, in effect, that the bank cannot come into court and assert its right to notice and hearing without waiving such rights. If this argument is correct, then the bank is faced with the difficult choice of waiving its rights or ignoring the ex parte order and seeking relief from any contempt proceeding against its officers by habeas corpus, as did the relators in *Renfro* and the other cases above cited. We see no justification for the courts to deal so harshly with a third party who has not been charged with any wrong. The bank's compliance with the ex parte order was certainly not voluntary and, therefore, cannot be considered to be a waiver. Neither did it waive those rights by its intervention. The bank's officers should be commended rather than penalized for obeying the court's ex parte order and then proceeding in an orderly manner to seek vacation of the order and restoration of the bank's former position.

The defendants Mitchell and National Whirlpool have filed a brief in which they assert that this appeal is moot, except with respect to the $4,500 fee allowed to the receiver, because the funds in question have already been paid over by the receiver to a receiver appointed by the bankruptcy court and that no dispute exists between the bank and the trial court's receiver concerning the fee. They also contend that the trial judge no longer has power to control the funds because the bankruptcy court has exclusive jurisdiction over the debtor's assets.

We are not persuaded that the appeal is moot. In the first place, we have nothing before us but an unsupported assertion in the brief that the funds had been paid over to the bankruptcy court. No affidavit or other evidence has been presented to support the statement that the funds are in the custody of the bankruptcy court. Indeed, there is no actual proof in the present record that any bankruptcy proceedings are pending, although the assistant attorney general did make such a representation to the trial court.

In the second place, if we assume that bankruptcy proceedings are pending, the only bankruptcy of which we have any suggestion in this record is that of defendant National Whirlpool, which has filed a petition for an arrangement under chapter XI of the Bankruptcy Act. The corporate defendant so alleged in its answer. There is no suggestion in the record that the individual defendants, Doyle and Bobbie Mitchell, have filed a bankruptcy petition or that any bankruptcy proceedings have been filed against them. Apparently it is undisputed that "National Durafoam Corporation" has no connection with National Whirlpool other than that Doyle Mitchell is an officer of National Whirlpool and also is the owner or part-owner of the enterprise known as National Durafoam. The attorney general's petition affirmatively alleges that National Durafoam is not, as represented, a division of National Whirlpool, but only an assumed name under which the individual defendants operate. Consequently, we cannot assume that the bankruptcy petition filed by National Whirlpool also subjects the assets of National Durafoam to the jurisdiction of the bankruptcy court. Of the funds paid over by the bank to the receiver, only the sum of $576.37 had been on deposit in the name of National Whirlpool, and that sum is not in controversy since the bank does not request its return. The funds in controversy are the $8,969.74 which had been deposited in the name of National Durafoam. We have no evidence before us that those funds are in the jurisdiction of the bankruptcy court. Consequently, we do not regard the present appeal as moot.

In the third place, that portion of the funds which has been applied to the receiver's fee is still within the court's power, regardless of any bankruptcy proceeding. Although the bank makes no complaint of the amount of the receiver's fee, we do not interpret the bank's brief as conceding that the funds which it claims to be beyond the control of the receiver may be summarily seized and applied to payment of the receiver's fee. We do not think they can be so applied without first determining whether or not they are subject to the control of the

receiver. Accordingly, on further proceedings in this cause, the trial court is directed to make that determination before it decides whether such funds should be applied to the fee allowed.

The order of the trial court refusing to vacate the ex parte order of February 16, 1977, is reversed, and the cause is remanded to the trial court with instructions to vacate the order of February 16 and to restore the funds to the bank insofar as the court and its receiver have the power to do so, pending final adjudication of the bank's claim or pending seizure of such funds by due process of law.